**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **CHARLES NORWOOD,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | **No.** 13-CV-2590 | |
| | ) | | |
| **vs.** | ) | | |
| | ) | | |
| **CITY OF CHICAGO, and CHICAGO POLICE** | ) | | |
| **OFFICER NELSON STEWART,** | ) | | |
| | ) | **JURY TRIAL DEMANDED** | |
| **Defendants.** | ) | | |

## COMPLAINT

NOW COMES Plaintiff, CHARLES NORWOOD, through his attorney, PERRY GRIMALDI, and complaining of Defendants, CITY OF CHICAGO and CHICAGO POLICE OFFICER NELSON STEWART, as follows:

**INTRODUCTION**

1.     This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction of the action pursuant to 28 U.S.C. Sec. 1331, 28 U.S.C. Sec. 1367, and 42 U.S.C. Sec. 1983, and venue is proper under 28 U.S.C. Sec. 1391(b).   On information and belief, all parties reside in the judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**PARTIES**

3.     Plaintiff Charles Norwood ("Plaintiff ") is an African-American gay man who

resides in Chicago, Illinois.

4.       Defendant Chicago Police Officer Nelson Stewart ("Defendant Stewart") was, at the time of this occurrence, a duly appointed Chicago Police Officer. Defendant Stewart engaged in the conduct complained of in the complaint while on duty and during the course and scope of his employment with the City of Chicago.

5.       At all times material to this complaint, Defendant Stewart was acting under color of state law, ordinance, and/or regulation. He is sued in his individual capacity.

6.       Defendant City of Chicago ("Defendant Chicago") is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of Defendant Stewart, and is responsible for the policies, practices and customs of its Police Department, City Council, Office of Professional Standards, and Police Board.

**BACKGROUND**

7.       When Plaintiff was eighteen (18) years old, Plaintiff was arrested by Chicago Police Officers for a minor violation, and taken to the 11th District of the Chicago Police Department located at Harrison Street and Kedzie Avenue, in Chicago, Illinois.

8.       After being transferred to the 11th District and processed, he was placed in a cell in an isolated area of the lock up area. This cell was not located near the other cells in the lock up area that generally contained other men who were incarcerated.

9.       Upon information and belief, Plaintiff was placed in this isolated cell because he was gay and/or gender non-conforming and the Chicago Police Department had no written policies, procedures or training materials that instructed officers on how to properly identify and detain gay, transgender and/or gender non-conforming individuals who had been arrested.

10.    While being held at the 11th District, Plaintiff first encountered Defendant Stewart.

11. Defendant Stewart told Plaintiff that if he engaged in sexual acts with him and/or performed various sexual acts for Defendant Steward to observe, Defendant Steward would get plaintiff bonded out and released earlier than expected.

12. Plaintiff did not want to engage in any sexual acts with or for Defendant Stewart, but he felt powerless, vulnerable and coerced into doing so in order to avoid any retributive acts by Defendant Stewart and with the hope of getting released. Plaintiff was sexually abused by Defendant Stewart.

13. On May 22, 2010, Plaintiff appearing in a manner that was gender non-conforming, was arrested by Chicago Police Officers for the offense of "Soliciting on the Public Way", and taken to the 11th District Station of the Chicago Police Department located at Harrison Street and Kedzie Avenue, in Chicago, Illinois.

14. After being transferred to the 11th District and processed for that May 22, 2010 arrest, he was placed in a cell in an isolated area of the lock up area. This cell was not located near the other cells in the lock up area that generally contained other men who were incarcerated.

15. Upon information and belief, Plaintiff was placed in this isolated cell for that May 22, 2010 arrest because he was gay and/or gender non-conforming and the Chicago Police Department had no written policies, procedures or training materials that instructed officers on how to properly identify and detain gay, transgender and/or gender non-conforming individuals who had been arrested.

16. While detained in the isolated cell for that May 22, 2010 arrest, Plaintiff was confronted by Defendant Stewart.

17. Defendant Stewart told Plaintiff that if he engaged in sexual acts with him and/or performed various sexual acts for Defendant Steward to observe, Defendant Steward would get

plaintiff bonded out and released earlier than expected.

18.    Plaintiff did not want to engage in sexual acts with Defendant Stewart, but he felt powerless, vulnerable and coerced into doing so in order to avoid any retributive acts by Defendant Stewart and with the hope of getting released.    Plaintiff was sexually abused by Defendant Stewart.

19.    On July 31, 2010, Plaintiff appearing in a manner that was gender non-conforming, was arrested by Chicago Police Officers for the offense of "Solicite Rides On The Public Way", and taken to the 11th District Station of the Chicago Police Department located at Harrison Street and Kedzie Avenue, in Chicago, Illinois.

20.    After being transferred to the 11th District and processed for that July 31, 2010 arrest, he was placed in a cell in an isolated area of the lock up area.    This cell was not located near the other cells in the lock up area that generally contained other men who were incarcerated.

21.    Upon information and belief, Plaintiff was placed in this isolated cell for that July 31, 2010 arrest because he was gay and/or gender non-conforming and the Chicago Police Department had no written policies, procedures or training materials that instructed officers on how to properly identify and detain gay, transgender and/or gender non-conforming individuals who had been arrested.

22.    While detained in the isolated cell for that July 31, 2010 arrest, Plaintiff was confronted by Defendant Stewart.

23.    Defendant Stewart told Plaintiff that if he engaged in sexual acts with him and/or performed various sexual acts for Defendant Steward to observe, Defendant Steward would get plaintiff bonded out and released earlier than expected.

24.    Plaintiff did not want to engage in sexual acts with Defendant Stewart, but he felt

4

powerless, vulnerable and coerced into doing so in order to avoid any retributive acts by Defendant Stewart and with the hope of getting released. Plaintiff was sexually abused by Defendant Stewart.

25.   On March 8, 2011, Plaintiff appearing in a manner that was gender non-conforming, was arrested by Chicago Police Officers for the offense of "Soliciting Unlawful Business", and taken to the 11th District Station of the Chicago Police Department located at Harrison Street and Kedzie Avenue, in Chicago, Illinois.

26.   After being transferred to the 11th District and processed for that March 8, 2011 arrest, he was placed in a cell in an isolated area of the lock up area. This cell was not located near the other cells in the lock up area that generally contained other men who were incarcerated.

27.   Upon information and belief, Plaintiff was placed in this isolated cell for that March 8, 2011 arrest because he was gay and/or gender non-conforming and the Chicago Police Department had no written policies, procedures or training materials that instructed officers on how to properly identify and detain gay, transgender and/or gender non-conforming individuals who had been arrested.

28.   While detained in the isolated cell for that March 8, 2011 arrest, Plaintiff was confronted by Defendant Stewart.

29.   Defendant Stewart told Plaintiff that if he engaged in sexual acts with him and/or performed various sexual acts for Defendant Steward to observe, Defendant Steward would get plaintiff bonded out and released earlier than expected.

30.   Plaintiff did not want to engage in sexual acts with Defendant Stewart, but he felt powerless, vulnerable and coerced into doing so in order to avoid any retributive acts by Defendant Stewart and with the hope of getting released. Plaintiff was sexually abused by Defendant

Stewart.

31.    On April 7, 2011, Plaintiff appearing in a manner that was gender non-conforming, was arrested by Chicago Police Officers for the offense of "Prostitution" and taken to the 11th District Station of the Chicago Police Department located at Harrison Street and Kedzie Avenue, in Chicago, Illinois.

32.    After being transferred to the 11th District and processed for that April 7, 2011 arrest, he was placed in a cell in an isolated area of the lock up area.   This cell not located near the other cells in the lock area that generally contained groups of men.

33.    Upon information and belief, Plaintiff was placed in this isolated cell for that April 7, 2011 arrest because he was gay and gender non-conforming and the Chicago Police Department had no written policies, procedures or training materials that guided officers on how to properly identify and detain gay, gender non-conforming and transgender individuals who had been arrested.

34.    While detained in the isolated cell for that April 7, 2011 arrest, Plaintiff was confronted by Defendant Stewart.

35.    Defendant Stewart told Plaintiff that if he engaged in sexual acts with him and/or performed various sexual acts for Defendant Steward to observe, Defendant Steward would get plaintiff bonded out and released earlier than expected.

36.    Plaintiff did not want to engage in sexual acts with Defendant Stewart, but he felt powerless, vulnerable and coerced into doing so in order to avoid any retributive acts by Defendant Stewart and with the hope of getting released.   On April 7, 2011, Plaintiff was sexually abused by Defendant Stewart.

37.    During the course of these non-consensual and coercive sexual encounters, Plaintiff

was forced to expose and touch his genitalia and other body parts for Defendant Stewart's arousal. Defendant Stewart also forced Plaintiff to touch Stewart's exposed penis.

38.    Plaintiff was not the only gay and/or gender non-conforming individual who was targeted and sexually abused by Defendant Stewart.   There were other individuals locked up at the 11th District who were subjected to the same and similar forms of gross and egregious misconduct.

**COUNT I**
**[42 U.S.C. § 1983 for Excessive Force and Denial of Plaintiff's Liberty Interest]**
**April 7, 2011 Actions of Defendant Stewart**

39.    Each of the foregoing Paragraphs is incorporated as if restated fully herein.

40.    As a direct and proximate result of Defendant Stewart's acts of sexual abuse on April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

41.    The actions of Defendant Stewart sexually abusing and using excessive and unjustifiable force and violence against Plaintiff on April 7, 2011 violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and his fundamental liberty interest guaranteed by the due process clause of the Fourteenth Amendment, and thus violated his rights guaranteed under 42 U.S.C. § 1983.

42.    The aforementioned actions of Defendant Stewart on April 7, 2011 were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from Defendant Chicago Police Officer Nelson Stewart.   Additionally, because Defendant Chicago Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard

for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this Defendant Chicago Police Officer Nelson Stewart. Plaintiff also demands costs and attorneys' fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this Court deems equitable and just.

## COUNT II
### [42 U.S.C. § 1983 Claim for Illegal Search]
### April 7, 2011 Actions of Defendant Stewart

43.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

44.     As a direct and proximate result of Defendant Stewart's acts of sexual abuse on April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

45.     The actions of Defendant Officer Stewart in sexually abusing Plaintiff and forcing him to undress and remove his clothing on April 7, 2011, violated Plaintiff's Fourth Amendment right to be free from an unreasonable search guaranteed under the U.S. Constitution and thus violated his rights guaranteed under 42 U.S.C. § 1983.

46.     The aforementioned actions of Defendant Stewart on April 7, 2011 were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from Defendant Chicago Police Officer Nelson Stewart. Additionally, because Defendant Chicago Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this Defendant Chicago Police Officer Nelson Stewart. Plaintiff also demands costs and attorneys'

fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this Court deems equitable and just.

### COUNT III
**[42 U.S.C. § 1983 Denial of Plaintiff's Rights**
**Guaranteed by the 14th Amendment's Equal Protection Clause]**
**April 7, 2011 Actions of Defendant Stewart**

47.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

48.     As a direct and proximate result of Defendant Stewart's acts of sexual abuse on April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

49.     The actions of Defendant Stewart in sexually abusing, and illegally searching and humiliating Plaintiff described above on April 7, 2011, were motivated by animus against Plaintiff on the basis of Plaintiff's sexual orientation and gender non-conforming appearance, violating Plaintiff's Fourteenth Amendment right of equal protection guaranteed under the U.S. Constitution, and thus violating his rights guaranteed under 42 U.S.C. § 1983.

50.     Defendant Stewart acted with intent to treat Plaintiff disparately on the basis of Plaintiff's sexual orientation and gender non-conforming appearance, violating Plaintiff's Fourteenth Amendment right of equal protection guaranteed under the U.S. Constitution, and thus violating his rights guaranteed under 42 U.S.C. § 1983.

51.     The aforementioned actions of Defendant Stewart on April 7, 2011 were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from Defendant Chicago Police Officer Nelson Stewart.   Additionally, because Defendant Chicago

Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this Defendant Chicago Police Officer Nelson Stewart. Plaintiff also demands costs and attorneys' fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this Court deems equitable and just.

**COUNT IV**
**[42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant City of Chicago]**
**April 7, 2011 Actions of Defendant Stewart**

52.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

53.     As a direct and proximate result of Defendant Stewart's acts of sexual abuse on April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

54.     The aforementioned actions of Defendant Stewart on April 7, 2011 were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of Defendant Chicago, its police department, its Police Board, its I.P.R.A., its Personnel Division, and/or its Superintendents.

55.     At all times material to this complaint Defendant Chicago and its police department, Superintendents, I.P.R.A., O.P.S., I.A.D., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago, who commit acts of excessive force, including sexual assault, abuse and harassment; b) the police code of silence; and/or c) the failure to have any policies or procedures on how to properly identify and house individuals who are gay and/or gender

10

non-conforming.

56.     The policy, practice, and custom of a police code of silence results in police officers of Defendant Chicago refusing to report instances of police misconduct of which they are aware, despite their obligation under police regulations to do so, and also includes police officers of Defendant Chicago either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have used excessive force and coercively or otherwise unconstitutionally interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant.

57.     The fact that the aforementioned code of silence exists is documented in the recent jury verdict in *Obryka v. City of Chicago, et al.,* 07 C 2372 (N.D. Ill) finding the Chicago Police Department has a code of silence and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and I.P.R.A./O.P.S. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, Mayor Richard M. Daley, and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they have not acted to eliminate the code or to counteract its impact on police discipline and the use of excessive force.

58.     The *de facto* policies, practices and customs of failing to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

11

59.     Additionally, that the unconstitutional actions of the Defendant Stewart on April 7, 2011 were part of a widespread municipal policy, practice and custom of Defendant Chicago is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers of Defendant Chicago, including, but not limited to, Mayor Richard Daley and superintendent Phil Cline, as well as by a wide range of other police officials, officers, and divisions of the Police Department of Defendant Chicago, including its Internal Affairs Division, the Detective Division, and the Public Affairs Section.   This involvement and ratification is further demonstrated, *inter alia*, by the public statements of these policymaking officials, and the total failure of the Police Department of Defendant Chicago to investigate the unconstitutional conduct of Defendant Stewart, or to discipline him, in this or other cases, for their unconstitutional conduct.

60.     The aforementioned policies, practices and/or customs of Defendant Chicago of failing to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago, who commit acts of police misconduct, the police code of silence, the encouragement excessive force, and of targeting gay, gender non-conforming and other sexual minorities, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because Defendant Stewart had good reason to believe that his misconduct on April 7, 2011 would not be revealed or reported by fellow officers or his supervisors, that his denial would go unchallenged by these supervisors and fellow officers of the Police Department of Defendant Chicago, from the police Superintendents, Police Board, and Directors of I.P.R.A./O.P.S. on down, and that Defendant Stewart was effectively immune from disciplinary action, thereby protecting him from the consequences of his unconstitutional conduct on April 7, 2011.

61.     But for the belief that he would be protected, both by fellow officers and by the Police Department of Defendant Chicago, from serious career consequences, Defendant Stewart would not have engaged in the conduct on April 7, 2011 that resulted in the injuries to the Plaintiff.

62.     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendant Stewart to commit the aforesaid acts on April 7, 2011 against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

63.     Additionally, said failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control Defendant Stewart, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

64.     These policies, practices and customs encouraged, *inter alia*, police misconduct, the use of excessive force, the targeting of sexual minorities, and the making of false statements and reports, and were, separately and together, the moving force and a direct and proximate cause of the unconstitutional acts committed by Defendant Stewart on April 7, 2011, in this case and the injuries sustained by Plaintiff.

WHEREFORE, Plaintiff demand judgment against Defendant City of Chicago for compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.


## COUNT V
**[745 ILCS 10/9-102 Claim Against Defendant City of Chicago]**
**April 7, 2011 Actions of Defendant Stewart**

65.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

66.     Defendant Chicago was the employer of Defendant Stewart at all times relevant to this Complaint.

67.     Defendant Stewart committed the acts alleged above on April 7, 2011 under color of law and in the scope of his employment as an employee of Defendant Chicago.

WHEREFORE, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the Defendant City of Chicago in the amount awarded to the Plaintiff against Defendant Chicago Police Officer Nelson Stewart as damages, attorney's fees, costs and interest, and/or for any settlement entered into between Plaintiff and Defendant Chicago Police Officer Nelson Stewart, and for whatever additional relief this Court deems equitable and just.

## COUNT VI
**[42 U.S.C. § 1983 for Excessive Force and Denial of Plaintiff's Liberty Interest]
Continuing and Repeated Series of Actions of Defendant Stewart
from May 22, 2010 to and including April 7, 2011**

68.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

69.     As a direct and proximate result of the continuing and repeated series of actions of Defendant Stewart repeatedly sexually abusing Plaintiff, during the period from May 22, 2010 to and including April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

70.     The continuing and repeated series of actions of Defendant Stewart in repeatedly sexually abusing and using excessive and unjustifiable force and violence against Plaintiff, during the time period from May 22, 2010 to and including April 7, 2011, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and his fundamental liberty interest guaranteed by the due process clause of the Fourteenth Amendment, and thus violated his rights guaranteed under 42 U.S.C. § 1983.

14

71.     The aforementioned continuing and repeated series of actions of Defendant

Stewart, during the time period from May 22, 2010 to and including April 7, 2011, were the direct

and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries,

pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from

Defendant Chicago Police Officer Nelson Stewart.   Additionally, because Defendant Chicago

Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard

for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this

Defendant Chicago Police Officer Nelson Stewart.   Plaintiff also demands costs and attorneys'

fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this

Court deems equitable and just.


### COUNT VII
**[42 U.S.C. § 1983 Claim for Illegal Search]**
**Continuing and Repeated Series of Actions of Defendant Stewart**
**from May 22, 2010 to and including April 7, 2011**

72.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

73.     As a direct and proximate result of the continuing and repeated series of actions of

Defendant Stewart repeatedly sexually abusing Plaintiff, during the period from May 22, 2010 to

and including April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental

distress, pain, anguish, humiliation and shame.

74.     The continuing and repeated series of actions of Defendant Officer Stewart in

repeatedly sexually abusing Plaintiff and forcing him to undress and remove his clothing, during

the time period from May 22, 2010 to and including April 7, 2011, violated Plaintiff's Fourth

Amendment right to be free from an unreasonable search guaranteed under the U.S. Constitution

and thus violated his rights guaranteed under 42 U.S.C. § 1983.

75. The aforementioned continuing and repeated series of actions of Defendant Stewart, during the time period from May 22, 2010 to and including April 7, 2011, were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from Defendant Chicago Police Officer Nelson Stewart. Additionally, because Defendant Chicago Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this Defendant Chicago Police Officer Nelson Stewart. Plaintiff also demands costs and attorneys' fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this Court deems equitable and just.

## COUNT VIII
**[42 U.S.C. § 1983 Denial of Plaintiff's Rights
Guaranteed by the 14th Amendment's Equal Protection Clause]
Continuing and Repeated Series of Actions of Defendant Stewart
from May 22, 2010 to and including April 7, 2011**

76. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

77. As a direct and proximate result of the continuing and repeated series of actions of Defendant Stewart repeatedly sexually abusing Plaintiff, during the period from May 22, 2010 to and including April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

78. The continuing and repeated serious of actions of Defendant Stewart in repeatedly sexually abusing, and illegally searching and humiliating Plaintiff described above, during the

period from May 22, 2010 to and including April 7, 2011, were motivated by animus against Plaintiff on the basis of Plaintiff's sexual orientation and gender non-conforming appearance, violating Plaintiff's Fourteenth Amendment right of equal protection guaranteed under the U.S. Constitution, and thus violating his rights guaranteed under 42 U.S.C. § 1983.

79.     Defendant Stewart acted with intent to treat Plaintiff disparately on the basis of Plaintiff's sexual orientation and gender non-conforming appearance, violating Plaintiff's Fourteenth Amendment right of equal protection guaranteed under the U.S. Constitution, and thus violating his rights guaranteed under 42 U.S.C. § 1983.

80.     The aforementioned continuing and repeated serious of actions of Defendant Stewart, during the period from May 22, 2010 to and including April 7, 2011, were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, and shame.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages from Defendant Chicago Police Officer Nelson Stewart.   Additionally, because Defendant Chicago Police Officer Nelson Stewart acted maliciously, wilfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands substantial punitive damages from this Defendant Chicago Police Officer Nelson Stewart.   Plaintiff also demands costs and attorneys' fees from Defendant Chicago Police Officer Nelson Stewart and whatever additional relief this Court deems equitable and just.


**COUNT IX**
**[42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant City of Chicago]**
**Continuing and Repeated Series of Actions of Defendant Stewart**
**from May 22, 2010 to and including April 7, 2011**

81.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

82.     As a direct and proximate result of the continuing and repeated series of actions of Defendant Stewart repeatedly sexually abusing Plaintiff, during the period from May 22, 2010 to and including April 7, 2011, Plaintiff suffered and continues to suffer, *inter alia*, severe mental distress, pain, anguish, humiliation and shame.

83.     The continuing and repeated series of actions of Defendant Stewart, as alleged above, during the period from May 22, 2010 to and including April 7, 2011, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of Defendant Chicago, its police department, its Police Board, its I.P.R.A., its Personnel Division, and/or its Superintendents.

84.     At all times material to this complaint, including during the period from May 22, 2010 to and including April 7, 2011, Defendant Chicago and its police department, Superintendents, I.P.R.A., O.P.S., I.A.D., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago, who commit acts of excessive force, including sexual assault, abuse and harassment; b) the police code of silence; and/or c) the failure to have any policies or procedures on how to properly identify and house individuals who are gay and/or gender non-conforming.

85.     The policy, practice, and custom of a police code of silence results in police officers of Defendant Chicago refusing to report instances of police misconduct of which they are aware, despite their obligation under police regulations to do so, and also includes police officers of Defendant Chicago either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have used excessive force and coercively or otherwise unconstitutionally

interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant.

86.    The fact that the aforementioned code of silence exists is documented in the recent jury verdict in *Obryka v. City of Chicago, et al.,* 07 C 2372 (N.D. Ill) finding the Chicago Police Department has a code of silence and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and I.P.R.A./O.P.S. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, Mayor Richard M. Daley, and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they have not acted to eliminate the code or to counteract its impact on police discipline and the use of excessive force.

87.    The *de facto* policies, practices and customs of failing to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

88.    Additionally, that the unconstitutional actions of the Defendant Stewart were part of a widespread municipal policy, practice and custom of Defendant Chicago is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers of Defendant Chicago, including, but not limited to, Mayor Richard Daley and superintendent Phil Cline, as well as by a wide range of other police officials, officers, and divisions of the Police Department of Defendant Chicago, including its Internal Affairs Division, the Detective Division, and the Public Affairs Section.    This involvement and ratification is further demonstrated, *inter alia*, by the public statements of these policymaking officials, and the total failure of the Police

Department of Defendant Chicago to investigate the unconstitutional conduct of Defendant Stewart, or to discipline him, in this or other cases, for their unconstitutional conduct.

89.     The aforementioned policies, practices and/or customs of Defendant Chicago of failing to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers of Defendant Chicago, who commit acts of police misconduct, the police code of silence, the encouragement excessive force, and of targeting gay, gender non-conforming and other sexual minorities, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because Defendant Stewart had good reason to believe that his misconduct would not be revealed or reported by fellow officers or his supervisors, that his denial would go unchallenged by these supervisors and fellow officers of the Police Department of Defendant Chicago, from the police Superintendents, Police Board, and Directors of I.P.R.A./O.P.S. on down, and that Defendant Stewart was effectively immune from disciplinary action, thereby protecting him from the consequences of his unconstitutional conduct.

90.     But for the belief that he would be protected, both by fellow officers and by the Police Department of Defendant Chicago, from serious career consequences, Defendant Stewart would not have engaged in the continuing and repeated series of actions alleged, during the period from May 22, 2010 to and including April 7, 2011, that resulted in the injuries to the Plaintiff.

91.     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendant Stewart to commit the aforesaid continuing and repeated series of acts, during the period from May 22, 2010 to and including April 7, 2011, against Plaintiff, and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

92.     Additionally, said failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control Defendant Stewart, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

93.     These policies, practices and customs encouraged, *inter alia*, police misconduct, the use of excessive force, the targeting of sexual minorities, and the making of false statements and reports, and were, separately and together, the moving force and a direct and proximate cause of the continuing and repeated series of unconstitutional acts committed by Defendant Stewart in this case, during the period from May 22, 2010 to and including April 7, 2011, and the injuries sustained by Plaintiff.

WHEREFORE, Plaintiff demand judgment against Defendant City of Chicago for compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.


**COUNT X**
**[745 ILCS 10/9-102 Claim Against Defendant City of Chicago]**
**Continuing and Repeated Series of Actions of Defendant Stewart**
**from May 22, 2010 to and including April 7, 2011**

94.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

95.     Defendant Chicago was the employer of Defendant Stewart at all times relevant to this Complaint.

96.     Defendant Stewart committed the continuing and repeated series of acts alleged above, during the period from May 22, 2010 to and including April 7, 2011, under color of law and in the scope of his employment as an employee of Defendant Chicago.

WHEREFORE, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the Defendant City of Chicago in the amount awarded to the Plaintiff against Defendant Chicago

Police Officer Nelson Stewart as damages, attorney's fees, costs and interest, and/or for any settlement entered into between Plaintiff and Defendant Chicago Police Officer Nelson Stewart, and for whatever additional relief this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated: April 7, 2013

Respectfully submitted,

**_/s/ Perry Grimaldi_____**
Attorney for Plaintiff

**PERRY GRIMALDI**
Attorney for Plaintiff
20 North Clark Street
Suite 1450
Chicago, IL  60602
Tel. 312.388.0808
Fax. 312.242.3041
Email: perry@perrygrimaldi.com
Illinois ARDC No. 6199164